ELEANOR FALLON, APPELLANT, *v.* JOHN KEHOE AND CATHARINE KEHOE, RESPONDENTS.

CONVEYANCE—NAME.—If the true owner conveys property by any name, the conveyance, as between the grantor and grantee, will transfer the title.

CONVEYANCE—REGISTRATION.—The execution of a conveyance of land by the owner, in his rightful name, though different from that in which he acquired it, when duly recorded, will operate as constructive notice of the sale and transfer of the title, and will take precedence of a subsequently recorded deed to the same land, executed in the name by which it was acquired.

APPEAL from the District Court of the Third District, County of Santa Clara.

Trial by the Court, and judgment being given in favor of defendants, the plaintiff appealed.

The facts in the case are stated in the opinion.

*Bodley & Rankin,* for Appellant.

It will not be denied that the grant from Burton, the Alcalde, vested the title in Jeremiah Fallon. He was the person who received it from the Alcalde; and whether that officer designated him by one name or another, can make no difference. If the Alcalde saw fit to deal with him by a nickname, that did not affect his identity. He was still Jeremiah Fallon, and had the right to sell˙and dispose of his property by the name which rightly belonged to him. His conveyance to us by his true name vested in us the title to the land. There is no reason why he should convey to us by his nickname. The contract of sale was made with him, and the conveyance executed by him in pursuance of it; and it was sufficient, as between the parties, at that time.

We do not understand the defendants to deny that we got the title. In what way, then, have we become divested of it? Our deed being sufficient, in law, to convey the land, what have we done, or omitted to do, by reason of which our estate is forfeited? What duty did we owe to the defendants, failing to perform which, they have acquired the right to take our land? They took the position, in the Court below, that we were at fault in not taking our conveyance in the name of "Darby," instead of "Jeremiah;" because the grant stood in the name of the former, and that, in examining the records for incumbrances, it was sufficient for them to learn that no conveyance had been recorded in the name of Darby; that we have misled them, because we thought best to deal with a party by his true name.

Their position in the case requires them to admit that the Alcalde title vested in the man Jeremiah Fallon. (See *Staak* v. *Sigelkow,* 12 Wis. 234; *Russell* v. *Marks,* 3 Met. Ky. 37; and 5 Indiana, Porter, 267.) The fact that the grant was issued and delivered to him by the name of Darby, could not oblige us to take a deed from him in that name. Our business was to get his title; we were not compelled to record the deed at all, at that time. There was no such con-

dition imposed upon us in order to enjoy what we had pur-
chased.

The Court will observe that the deed was executed long
prior to the passage of any law requiring deeds to be
recorded.   Until the passage of the Recording Act, the
forty-first section of which has been construed to include
within the penalties mentioned in the twenty-sixth section
all conveyances made prior to its date, we had a perfect title
to the land in suit.   If we have lost, and the defendants have
acquired that title, it has resulted from the operation of that
Act.

Now, assuming (which cannot be denied) that Jeremiah
Fallon's deed conveyed the title to us (see *Middleton* v.
*Findla*, 25 Cal. 76), we should not have been in default, in
any event, had our deed not been recorded, as it was, till
after the passage of the Act.   That being so, what duty did
the Act require us to perform after its passage, except to put
it on record?   It was good before, and the Act only required
it to be recorded.   The language is : "all conveyances here-
tofore made."   It is not easy to see wherein we have failed
to comply with the law, or what more we could do.

*Jarboe & Harrison*, for Respondents.

The only question to be determined is : Did the defendant,
at the time of her purchase, have any notice, actual or con-
structive, of the deed to the plaintiff.   All the notice that
the plaintiff contends to have existed is, that the record
shows that *Jeremiah* Fallon made a conveyance of a lot of
land which, upon the records, stood in the name of *Darby*
O'Fallon, and that "Darby" is a nickname for "Jeremiah."
It is not pretended that the defendant knew that "Darby"
was a nickname for "Jeremiah," or that she knew that
"Jeremiah" had ever conveyed the lot.   There is no pre-
tense of *actual* knowledge.   But the plaintiff says that "the
defendant was bound to make inquiry as to who was the
actual grantee in the Alcalde grant, and to take notice that
such actual grantee had already conveyed to plaintiff."

How bound?   What inquiry to make?   Most assuredly
had she the right to assume that the name written in the

original grant was the *actual* name of the grantee.   If it was
not the actual name of the grantee, then it must be shown
she had knowledge of that fact, before she can be charged
with any delinquency.   All the *constructive* knowledge that
she is chargeable with, is such knowledge as the statute has
declared shall be constructive notice.   That declaration is
found in Sec. 25 of the Recording Act, and is "notice of
the contents" of the instrument recorded.   Now, the " con-
tents" of the deed to the plaintiff were, that it was made by
*Jeremiah* Fallon.   It was not "contained" therein that
"Darby" was a nickname for "Jeremiah;" and, we submit,
that the defendant was, therefore, not constructively or
actually notified of that fact.   Finding a grant to Darby
O'Fallon, she was bound to make no inquiry, further than to
ascertain whether Darby O'Fallon had conveyed the prem-
ises to her grantor, and that was clearly shown by the
records.

We again say, that the records of the County Recorder's
office could alone impart any constructive notice to her of
any conveyance.   The object of the Recording Act is to
afford to purchasers of real estate a means of determining
whether the proposed grantor has previously disposed of, or
encumbered the estate ; and to afford facility in this respect,
it is provided, that the Recorder shall keep indexes of all
deeds, placing the names of the grantors in alphabetical
order.

As was remarked by the Supreme Court of Pennsylvania
(*Heil & Lawer's Appeal,* 40 Penn. St. R. 453) : " The Regis-
tration Act provides for notice to the eye, and not to the
ear."   "It does not impose the duty of inquiring whether
some other letters may not spell the name in another lan-
guage."   In that case, the two names in the record belonged
to the same person ; but, although *idem sonantes,* the Court
did not consider that notice of one was imparted by the entry
of the other.   We may add to the observation of the Court
in that case, that the Registration Act does not impose the
necessity of ascertaining whether some other letters may not
spell the grantor's nickname.

CROCKETT, J., delivered the opinion of the Court:

In 1847 the Alcalde of San José granted a lot in that town to "Darby O'Fallon." This, however, was not the true name of the grantee, whose real name was Jeremiah Fallon, and "Darby O'Fallon" was only a nickname, by which he was generally or often called and known. In January, 1850, whilst still the owner of the lot, Fallon, for a valuable consideration, paid to him by one Murray, a brother of the plaintiff, conveyed the lot in fee by his true name, Jeremiah Fallon, to the plaintiff in this action. At the date of this conveyance, the Recording Act of this State had not taken effect, but was subsequently passed on the 16th of April of that year. After the passage of this Act, and before Fallon had made any other conveyance of the property, the deed to the plaintiff was duly recorded. It appears that subsequently, in May, 1855, the original grantee, Fallon, by a deed executed by him by the name of "Darby O'Fallon," for a valuable consideration paid to him by Oliver Teal, conveyed the lot to the latter; that the title of Teal, by proper mesne conveyances, was afterwards vested in one Davis Divine, who, when he took the conveyance, well knew Jeremiah Fallon, and that he signed and executed the deed to Teal, at the request of Divine, as "Darby O'Fallon," and not as Jeremiah, and that Divine knew Darby O'Fallon and Jeremiah Fallon to be the same person; that afterwards, the defendant (Catharine Kehoe), for a valuable consideration, and in good faith, purchased the premises from Divine, who, in 1857, executed a conveyance to her, in due form, under which she immediately entered into, and has ever since remained in possession; that Divine entered into the possession when he obtained a conveyance of said lot, and continued in possession until his sale and conveyance to Kehoe. Under these facts, the question for our decision is, Which of the two—the plaintiff or defendant—has the title?

The first point for solution is, whether or not the conveyance of Fallon, by his true name, to the plaintiff, was operative in law to convey his title? We apprehend there

can be but little doubt on this point, and we do not understand counsel as controverting the proposition, that, if the true owner conveys the property by any name, the conveyance, as between the grantor and grantee, will transfer the title. (*Middleton* v. *Findla,* 25 Cal. 80.) The plaintiff, therefore, acquired Fallon's title by a sufficient and valid conveyance. The Recording Act, which was subsequently passed, required all deeds, whether made before or after the passage of the Act, to be recorded, in order to operate as constructive notice to subsequent purchasers.

Section 26 provides that "every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this Act, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded."

Section 41 provides that "all conveyances of real estate heretofore made and acknowledged, or proved according to the laws in force at the time of such making and acknowledgment, or proof, shall have the same force as evidence, and be recorded in the same manner, and with like effect, as conveyances executed and acknowledged in pursuance of this Act." Section 25 provides that all conveyances, certified and recorded as prescribed in the Act, shall, from the time of filing the same for record, "impart notice to all persons of the contents thereof, and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

The deed to the plaintiff was duly recorded as required by the Act; and if her title is not valid, it must be by reason of her omission to perform some act not required by the statute. She has certainly performed all the conditions demanded by the statute. Having, as we have seen, a valid and operative conveyance, which was translative of the title, she recorded it in due time, in the proper office, before any rights had vested in the defendants or their grantors. What more could she have done to protect her rights? Her conveyance was from the true owner, by his true name, and when recorded it imparted "notice to all persons of the contents thereof, and all subsequent purchasers and mort-

gagees shall be deemed to purchase with notice." The defendants, therefore, must be deemed to have had notice "of the contents" of this deed. But, it is said, this did not notify them that Jeremiah Fallon and Darby O'Fallon were the same person; and it is assumed that it was the duty of the plaintiff to put upon the record, in some form, a proper notice of this fact, in order to protect her title against a subsequent purchaser, in good faith, for a valuable consideration. We have been referred to no provision of the statute which imposed this duty upon her. In recording her deed, she did all that the statute requires, and I am aware of no principle of the common law which made it incumbent on her, in any form, to give notice that her grantor, Jeremiah Fallon, was known by the nickname of Darby O'Fallon, and that the grant was made to him by that name. It would have been better, perhaps, if the statute had contained a provision to the effect that when the owner of land conveys it by a different name from that in which he acquired it, the deed should contain a proper reference to that fact, for the security of subsequent purchasers or incumbrancers. But there is no such requirement in the statute, or at common law, and we have no power to exact conditions not found in the law. If land be conveyed to an unmarried woman, who afterward marries and becomes a widow, and then conveys the land by her last name, there can be no doubt that the record of the deed would impart notice to a subsequent purchaser; or if the name of the owner be changed by Act of the Legislature, and he afterward conveys by his new name, we apprehend there can be no doubt, as the law now stands, that his deed, when recorded, would impart notice. In such cases, the subsequent purchaser buys at his peril; and, however great the hardship which occasionally ensues (of which this case is, perhaps, an example), the remedy must be provided by the Legislature and not by the Courts. The evil is one which admits of a simple remedy. If the statute provided that if land be conveyed by a different name from that in which the grantor acquired it, the record of the deed should not impart notice to subsequent purchasers or incumbrancers, unless it contained proper recitals, showing why

the deed is made in a different name, the difficulty would be completely remedied.

But, under the law as it now is, the judgment, in our opinion, ought to be reversed and a new trial had, and it is so ordered.

SPRAGUE, J., gave no opinion.