ANN CAIN vs. EDWARD M. ROCKWELL.

Worcester. Oct. 4, 1881. — Jan. 27, 1882. LORD, W. ALLEN & C. ALLEN, JJ., absent.

The amendment of a writ, by changing the name of the plaintiff from "Mary Cain" to "Ann Cain," does not vacate an attachment of funds in the hands of a person summoned as trustee, so as to give an assignment to a third person, made before the amendment, preference over the attachment.

SCIRE FACIAS upon a judgment of the Police Court of Fitchburg against the defendant as trustee of John Cain, upon which execution was issued, demand made upon the trustee, and the execution returned unsatisfied. Michael Danahy appeared as claimant of the funds in the hands of the defendant. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court on appeal, on agreed facts, in substance as follows:

The plaintiff by the name of Mary Cain, which was a misnomer, her real name being Ann Cain, commenced a trustee process in the Police Court of Fitchburg against John Cain, as principal defendant, and the present defendant, as trustee, by writ dated August 11, 1879, and duly served on the trustee and the defendant on the following day, and duly entered in court.

John Cain appeared and filed a plea in abatement on the ground of the misnomer, but the trustee did not appear or make any answer. The trustee at the time of service was owing John Cain $36.56 for his personal services. On September 13, 1879, on motion of the plaintiff, in said Police Court, the writ was amended by substituting Ann Cain for Mary Cain as the plaintiff's name, the defendant by his attorney consenting to such amendment; and on October 4, 1879, judgment was rendered for the plaintiff for $35.42, and Rockwell was charged as trustee of John Cain for the amount of the judgment.

The trustee was never notified of the plaintiff's application for leave to amend her writ, and never had any knowledge of such application, or of the amendment being allowed, until

after the judgment was rendered and an execution issued, and until a demand made upon him on the execution, which execution was issued and demand made upon him within thirty days after the date of said judgment; but Rockwell on being informed of the amendment refused to pay over the funds in his hands, on the ground that the same were claimed by Danahy. On August 22, 1879, John Cain being indebted to the claimant, Danahy, in a sum larger than the amount in the trustee's hands, assigned to Danahy to secure such indebtedness all sums of money then due him from said Rockwell; and the debt to Danahy is still due.

It is admitted that there was a valid and effectual assignment of the funds in the trustee's hands to the claimant, unless the service of the plaintiff's writ on the trustee created a valid attachment thereof; or unless such attachment became valid as against said assignment by the amendment of the writ. The trustee had notice of this assignment the day after it was made; but still holds the funds due John Cain.

*H. Mayo*, for the plaintiff.

*C. H. Merriam*, for the defendant and the claimant.

MORTON, C. J. The power of our courts to allow amendments is very broad, permitting such amendments, either in form or substance, as are necessary to enable the plaintiff to sustain the action for the cause for which it was intended to be brought, or the defendant to make a legal defence. Gen. Sts. *c*. 129, §§ 40–42.

There can be no doubt that in this case the amendment changing the name of the plaintiff from " Mary Cain " to " Ann Cain," thus correcting a mere clerical error or misnomer, was rightly allowed. *Crafts* v. *Sikes*, 4 Gray, 194. The only question is whether this amendment vacated the attachment of the funds in the hands of the trustee, so as to give the assignment to the claimant, made before the amendment, the preference over the attachment.

As stated by Mr. Justice Wilde in *Haven* v. *Snow*, 14 Pick. 28, " amendments in form merely will not dissolve an attachment so as to let in subsequently attaching creditors, or discharge bail. To have this effect, the amendment must be such as may let in some new demand, or new cause of action."

In the case before us, the misnomer of the plaintiff was a mere misdescription of her cause of action, which could not mislead or injuriously affect the trustee. The amendment did not introduce a new cause of action. This case cannot be distinguished from the case of *Wight* v. *Hale*, 2 Cush. 486, where by an amendment the name of one of the plaintiffs was changed from "Wright" to "Wight," and it was held that it did not vacate the attachment, so as to let in an intervening title acquired before the amendment.

The case of *Terry* v. *Sisson*, 125 Mass. 560, upon which the claimant relies, differs essentially from the case at bar. In that case, the writ was originally brought against Sarah Sisson. It was afterwards amended by making the defendant Sarah F. Sisson. But before the amendment, the trustee, a savings bank, being called upon by Sarah F. Sisson, who had money deposited with it, had, in good faith and with no notice or knowledge that the person intended to be sued was Sarah F. Sisson, paid over to her the amount of the deposit. The trustee having been misled by the misnomer of the defendant, and having paid the funds in its hands to the depositor, in good faith, it was held that the subsequent amendment of the writ could not make it liable to pay the same over again to the plaintiff.

We are therefore of opinion, that the plaintiff's attachment in the case before us was not vacated by the amendment, and that she is entitled to judgment against the defendant.

*Judgment for the plaintiff.*